# AFFIDAVIT

1. I, Jennifer Misek, depose and make this affidavit in support of a complaint against Devin Austin Bishop alleging the commission of two offenses: (1) failure to report arrival and present for inspection in violation of Title 19, United States Code, Sections 1433(b) and 1436(a)(1), (c) and (2) assault on a federal official in violation of Title 18, United States Code, Sections 111(a)(1) and (b).

2. I am a Special Agent with the Federal Bureau of Investigation and have been so employed since 2016. I am currently assigned to the FBI's Bangor Maine Resident Agency of the FBI's Boston Division. In my time with the Federal Bureau of Investigation, I have investigated all types of criminal violations, including white collar crimes, public corruption, crimes against children, and various other violent crimes. As a federal agent, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

3. This Affidavit is based upon information gained from my investigation, training, research and experience, as well as my conversations with and review of written materials prepared by the individuals discussed below. I have included in this affidavit information that I believe necessary to establish probable cause to believe that Devin Austin Bishop committed the crimes alleged in the accompanying complaint.

4. I learned the following from reviewing a report prepared by a U.S. Customs and Border Protection, Office of Field Operations Officer hereinafter referred to as CBPO C.C.:

A. On February 22, 2026 CBPO C.C. was working at the Lubec, Maine Port of Entry. At approximately 6:40 p.m. a blue Honda Civic bearing Maine registration was observed traveling in the inbound lane from Canada towards the port of entry. The vehicle stopped short of the port of entry, then turned into the outbound lane (used by travelers leaving the U.S. heading into Canada) and proceeded towards the U.S. at a high rate of speed in the outbound lane.

B. CBPO C.C. was working in the primary (inbound) inspection lane and attempted to get the driver's attention, but the subject continued to accelerate at a high rate of speed passing the primary inspection booth into the U.S. without stopping for inspection. CBPO C.C. immediately gave chase in a government vehicle in an attempt to locate the Honda Civic.

C. After approximately five minutes, CBPO C.C. observed the vehicle and activated the emergency lights and sirens to conduct a high risk stop on the vehicle. The subject was pulled over near Pumping Station Road in Lubec. CBPO C.C. was alone with no backup nearby. It was dark with minimum to no lighting on the road. CBPO C.C. got out of his vehicle, drew his duty firearm and gave verbal commands to the subject to exit the vehicle with his hands up.

D. The subject (later identified as Devin Austin Bishop, hereinafter "Bishop") exited the Honda Civic. CBPO C.C. gave Bishop verbal commands to put his hands above his head. Bishop did not comply with the commands, and

      he put his hands in his pockets muttering to himself. CBPO C.C. continued to have his duty weapon trained on Bishop and gave commands to turn around and put his hands behind his back. CBPO C.C. holstered his duty firearm and proceeded to attempt to handcuff Bishop.

E.     Bishop started actively resisting before handcuffs were placed on him. He turned and attempted to close the distance with CBPO C.C.. Bishop began to act more erratic and appeared to be on drugs or alcohol and was yelling incoherently. CBPO C.C. warned Bishop that he would be sprayed with oleoresin capsicum (OC) spray (pepper spray) if he maintained his aggressive behavior. CBPO C.C. moved a few feet back and held the OC at Bishop's eyes, but he balled his fists and ignored the commands. CBPO C.C. sprayed Bishop and then proceeded to lay hands on Bishop in an attempt to control him.

F.     Bishop continued to resist as CBPO C.C. attempted to gain control. The two men went to the ground and wrestled. CBPO C.C. continued to give verbal commands to stop resisting. While on the ground, Bishop became more aggressive and attempted to grab CBPO C.C.'s firearm during the struggle. The subject continued to grab for the firearm as CBPO C.C. attempted to get Bishop under control.

G.     As Bishop continued to resist and tried to get on top of the officer, CBPO C.C. began to draw his firearm, at which time a passing motorist (here in after "PM") intervened and assisted CBPO C.C. with getting the subject

        into custody. Bishop put his hand on top of the slide of CBPO C.C.'s firearm and shouted he was CIA and he wanted to die. During the struggle the firearm discharged into a nearby snowbank as CBPO C.C. directed the muzzle away from himself and PM. CBPO C.C. regained control of the firearm as an off-duty corrections officer arrived on scene to assist.

H.     CBPO C.C. holstered his firearm. PM got off Bishop as CBPO C.C. and the off-duty Corrections Officer handcuffed him. Local EMS along with Washington County Sheriff arrived on scene afterwards. Bishop was transported to a local hospital.

5.     I learned the following from reviewing a statement prepared by the Passing Motorist (PM) referenced above who assisted CBPO C.C.:

A.     On the evening of February 22, 2026 PM was driving home from dinner with his wife and small child when he came upon a scene where vehicles were stopped in both directions of the road. One of the vehicles appeared to be a law enforcement vehicle. As another vehicle drove around the scene, PM observed what appeared to be an officer (CBPO C.C.) and another individual (Bishop) wrestling in the middle of the road.

B.     PM placed his vehicle in park and watched the scene for a moment. It appeared Bishop was overtaking or seemed capable of overtaking CBPO C.C. in the struggle. PM exited his vehicle and ran to the aid of CBPO C.C.. As he drew nearer, PM observed Bishop was attempting to gain control of CBPO C.C.'s firearm as CBPO C.C. screamed to Bishop to let go. PM began

to strike Bishop and drop his knee onto the man. PM grabbed one of Bishop's wrists while dropping his weight on Bishop's upper body while CBPO C.C. was trying to gain control of the weapon. During this struggle the gun discharged in what appeared to be a safe direction. PM managed to get Bishop into a chokehold.

C. Working together PM and CBPO C.C. were able to wrestle control of the firearm from Bishop, and it landed on the ground near PM. While PM continued to hold Bishop in a chokehold PM told CBPO C.C. to get the gun. CBPO C.C. retrieved the firearm and placed it in his holster.

D. PM recalled that a third person (believed to be a jail guard who happened to be passing by) arrived and assisted in placing Bishop in handcuffs.

6. I am advised by a representative of Customs and Border Protection that Bishop was subsequently "blue papered" and was being held for observation at a Machias, Maine medical facility where he remains.

7.  Based upon the foregoing, I believe there is probable cause to believe that Devin Austin Bishop violated Title 19, United States Code, Sections 1433(b) and 1436(a)(1), (c) and Title 18, United States Code, Sections 111(a)(1) and (b).

Dated at this 25th day of February 2026.

_____
Jennifer Misek
Special Agent,
Federal Bureau of Investigation

STATE OF MAINE

Penobscot, ss.                                                        February 25, 2026

Personally appeared before me the above-named Jennifer Misek and made oath as to the truth of the foregoing affidavit signed by him.

Before me,

_____
JOHN C. NIVISON
United States Magistrate Judge